UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
                                         :
THE BOARD OF TRUSTEES OF THE             :
OPERATING ENGINEERS PENSION TRUST,       :
on Behalf of Itself and All Others       :
Similarly Situated,                      :
                                         :
                   Plaintiff,            :
                                         :            09 Civ. 9333
                                         :            (BSJ)(DCF)
             v.                          :
                                         :
                                         :          **Opinion and Order**
JPMORGAN CHASE BANK, NATIONAL            :
ASSOCIATION,                             :
                                         :
                   Defendant.            :
----------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff The Board of Trustees of the Operating Engineers
Pension Trust ("Plaintiff"), as administrator of the Operating
Engineers Pension Trust (the "Plan"), has brought this proposed
class action against JPMorgan Chase Bank, N.A. ("JPMC") for
alleged breach of its fiduciary duties in violation of the
Employee Retirement Income Security Act of 1974, 29 U.S.C. §§
1001 et seq. ("ERISA").  On July 15, 2010, Plaintiff filed its
Second Amended Class Action Complaint ("Complaint"), which
alleges that JPMC breached its duties of care and loyalty by
investing and maintaining investments in two bond notes issued
by Lehman Brothers, Inc. ("Lehman") in the period leading up to
and after Lehman's ultimate collapse in September 2008, and that

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/20/12

such breaches caused the Plan to suffer monetary losses.  JPMC denies that any breach occurred, and has moved to dismiss the Complaint.  For the reasons stated below, JPMC's motion to dismiss is GRANTED.

BACKGROUND

Plaintiff entered into a written Securities Lending Agreement with JPMC dated November 1, 2005 ("SLA") pursuant to which Plaintiff participates in JPMC's securities lending program.  (Compl. ¶ 15 and Ex. A.)[1]  Through this program, JPMC facilitates loans of securities owned by the Plan to creditworthy third-party borrowers.  (Id. ¶ 16; SLA § 2(a).)  To secure the loans, the borrowers post collateral in the form of cash, government-issued securities, or letters of credit (collectively, "Collateral").  (Id. ¶ 17; SLA § 5(b).)  JPMC has full discretion under the SLA to invest some of the Collateral on behalf of the Plan as part of a comingled investment account ("Fund").  (Id. ¶ 18; SLA § 5(b).)  Under the SLA, JPMC provides investment management services to Plaintiff as an ERISA fiduciary.  (Id. ¶¶ 29-30.)

Fund investments made by JPMC under the SLA are made "at the sole risk of [the Plan]."  (SLA § 5(e).)  The SLA expressly states that "the return of principal in respect of Fund investments is not assured."  (SLA App. 1, at 5.)  Investments

---

[1] The following facts, unless otherwise noted, are taken from the Complaint and are assumed to be true for purposes of this motion.

of the Collateral are subject to guidelines agreed upon by the parties ("Guidelines"). (Compl. ¶ 20; SLA § 1(d) and App. 1.) The Guidelines set forth parameters within which JPMC may invest the Collateral, including limitations on the type of instruments in which the Collateral may be invested and the required minimum credit rating any eligible investment must have. (SLA App. 1 §§ B.1, H.1.) In addition, the Guidelines require that any non-U.S. government issued floating rate instrument must, at the time of purchase, have a maturity of no more than two years. (Id. § F.3.)

The SLA contains a negotiated fee arrangement whereby JPMC earns 30-40% of any profits from the Fund investments and makes nothing on Fund investments that lose money. (Compl. ¶¶ 26-27; SLA § 8(i).) Plaintiff does not claim that the fee arrangement was negotiated unfairly. In fact, the SLA contains language expressly stating that the agreement was "legally and validly entered into . . . ." (SLA § 3(b)(i).)

On August 24, 2006, and again on December 26, 2006, JPMC invested a total of roughly $446,000 of the Collateral in two Lehman floating rate notes (collectively, "Lehman Notes" or the "Notes"). (Compl. ¶ 3.) The Complaint alleges that the note purchased on August 26 had a maturity date of August 21, 2009. (Id.) According to the Pricing Supplement to the governing prospectus, however, the August Note had a maturity date of

August 22, 2008.  (Bonderoff Decl. in Support of Mot. to Dismiss Second Am. Compl., Sept. 15, 2010, Ex. E at 4.)

JPMC also acted independently as one of several clearing banks which advanced intraday credit to Lehman.  (Compl. ¶¶ 97-98.)  In February 2008, JPMC began to demand collateral from Lehman in order to secure the credit it was extending to Lehman. (Id. ¶ 99.)  Over the course of the next several months, JPMC demanded additional collateral from Lehman for the same purpose on at least five occasions.  (Id. ¶¶ 99-103.)  Lehman filed for bankruptcy on September 15, 2008.  (Id. ¶ 89.)  The value of the Plan's investment in the Lehman Notes dropped by 85 percent. (Id. ¶ 90.)

On July 15, 2010, Plaintiff filed the instant Complaint and asserted two counts of breach of fiduciary duty – one for breach of the duties of care and loyalty under ERISA § 404(a)(1) and the other for breach of the duty of loyalty under ERISA § 406(b).  The Complaint alleges that over the course of 2007 and 2008, "it became increasingly apparent, or should have to Defendant, that there was tremendous uncertainty surrounding Lehman's financial stability."  (Id. ¶ 4.)  In support of these allegations, Plaintiff relies heavily on various news clippings that allegedly predicted Lehman's downfall.  (Id. ¶¶ 38-88.) Plaintiff also asserts that an "implied volatility analysis," developed through basic financial modeling conducted by any

sophisticated investor, would have indicated to JPMC "as early
as July 2007 the uncertainty surrounding Lehman's credit
worthiness, warranting an exit from Lehman-related securities."
(Id. ¶ 91.)  Moreover, Plaintiff contends that a "widely used
and generally accepted bond analytic methodology," which
assesses the risk of default as a function of the pricing
discount, also would have indicated to a prudent manager of
retirement funds the "market consensus that the bond was not
investment grade, but rather was speculative."  (Id. ¶ 93.)

Plaintiff alleges further that JPMC must have known about
Lehman's impending failure because of actions JPMC took in its
role as a clearing bank for Lehman.  More specifically,
Plaintiff claims that JPMC "was intimately aware of Lehman's
significant risk of default" and "was so deeply concerned" about
Lehman's situation "that it took drastic steps to reduce its own
exposure to a Lehman default."  (Id. ¶ 96.)  As an ERISA
fiduciary with complete control over the investments of the
Collateral, Plaintiff contends, JPMC's knowledge about Lehman's
financial future should have prompted it to make an effort to
reduce or eliminate the Plan's exposure to a Lehman default.
(Id. ¶ 4.)  Plaintiff claims that JPMC held on to the Lehman
Notes because JPMC bore no risk of loss under the SLA and stood
to gain considerably if its "gamble" succeeded.  (Id.)  The Plan

suffered as a result of this alleged conflict of interest.  (Id.
¶ 45.)

On September 15, 2010, JPMC moved to dismiss the Complaint
for failure to state a claim under Federal Rule 12(b)(6).

## LEGAL STANDARD

"In deciding a motion to dismiss, a court ordinarily
accepts as true all well pleaded factual allegations and draws
all reasonable inferences in the plaintiff's favor."  In re
Lehman Bros. Sec. & ERISA Litig., 683 F. Supp. 2d 294, 298
(S.D.N.Y. 2010) (citation omitted).  To survive a Rule 12(b)(6)
motion to dismiss, a complaint must articulate sufficient
factual allegations "to raise a right to relief above the
speculative level, on the assumption that all the allegations in
the complaint are true (even if doubtful in fact.)"  Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).
A plaintiff must state "enough facts to state a claim to relief
that is plausible on its face."  Id. at 570.  Conclusory
statements and "formulaic recitation[s] of the elements of a
cause of action" are not sufficient.  Id. at 555.  In an ERISA
case, if a plaintiff "alleges, in conclusory terms only, that
there 'were clear warning signs' of collapse and that defendants
knew or should have known about [the] true financial state" of a
company in which a plan's assets were invested, then the
plaintiff has not met its burden under Rule 8(a).  In re Lehman

6

Bros., 683 F. Supp. 2d at 302 (internal quotation marks
omitted).  "In considering a motion to dismiss for failure to
state a claim, a district court must limit itself to the facts
stated in the complaint, documents attached to the complaint as
exhibits and documents incorporated by reference in the
complaint."  Hayden v. County of Nassau, 180 F.3d 42, 54 (2d
Cir. 1999).

ERISA § 404 establishes the fiduciary duty of care under a
prudent man standard.  The standard requires a fiduciary to
"discharge his duties with respect to a plan solely in the
interest of the participants and beneficiaries" and "with the
care, skill, prudence, and diligence under the circumstances
then prevailing that a prudent man acting in a like capacity and
familiar with such matters would use in the conduct of an
enterprise of a like character and with like aims."  29 U.S.C. §
1104(a)(1).

Section 406(b) provides in relevant part that a fiduciary
may not "deal with the assets of the plan in [its] own interest
or for [its] own account" or "act in any transaction involving
the plan on behalf of a party . . . whose interests are adverse
to the interests of the plan or the interests of its
participants or beneficiaries . . . ."  29 U.S.C. § 1106(b).

**ANALYSIS**

7

## I.  Duty of Care Claim[2]

The Complaint alleges that JPMC breached its fiduciary duty of care by imprudently investing some of the Plan's assets in the two Lehman Notes, by not monitoring the investments properly, and by imprudently maintaining the investments, all "despite growing uncertainty over Lehman's financial stability." (Compl. ¶ 5.)  Armed with merely conclusory allegations, Plaintiff asks the Court to speculate about how JPMC should have acted based on news articles selected after the fact and references to financial modeling that reflected a supposed "market consensus" that Lehman was headed for default.  However, the fiduciary duty to act prudently under the circumstances at the time of the decision precludes any judgment of a fiduciary's actions "from the vantage point of hindsight."  Chao v. Merino, 452 F.3d 174, 182 (2d Cir. 2006) (citation omitted).  And, even if references to articles and basic financial modeling were sufficient to make it "theoretically conceivable" that JPMC should have known about Lehman's weakening financial condition, such speculation is not enough to defeat a motion to dismiss. In re Lehman Bros., 682 F. Supp. 2d at 303 (citation omitted).

Plaintiff asserts that JPMC's conduct as a clearing bank for Lehman leads inevitably to the conclusion that JPMC must

---

[2] For ease of analysis, the Court will construe Plaintiff's two claims as a duty of care claim under ERISA §404(a)(1) and a duty of loyalty claim under ERISA §§ 404(a)(1) and 406(b).

have known that Lehman was headed for default.  Here, the
Complaint falls short again.  The Complaint refers generally to
an Examiner's Report ("Report"), which was submitted in
conjunction with Lehman's bankruptcy filing and was made
available to the public on March 11, 2010.  (Compl. ¶ 97.)
Plaintiff claims that the Report reveals that JPMC "was uniquely
positioned to understand Lehman's financial instability even
better than the market at large."  (Id.)  However, Plaintiff
neither provides facts from the Report to show specific
knowledge that JPMC acquired as a result of its purportedly
unique position, nor does it attach the Report to any of its
pleadings.  In addition, Plaintiff offers a complaint filed in a
Lehman Bankruptcy proceeding against JPMC ("Lehman Complaint")
to support its allegation that JPMC had knowledge of Lehman's
"financial results, plans and outlook," because it had
"unparalleled access to critical nonpublic information" about
Lehman's business.[3]  (Id. ¶ 105.)  The Complaint also alleges,
based on the Lehman Complaint, that JPMC "forced Lehman into a
series of revised security documentation in late August and
early September that overtly benefited JPMorgan to Lehman's
detriment."  (Id. ¶ 106.)  The allegations that JPMC preyed on

---

[3] In this regard, JPMC has argued that the communication of significant
nonpublic information—acquired in JPMC's commercial function as a clearing
bank for Lehman—to its fiduciary department would violate the securities law.
See 12 C.F.R. § 9.5(b), (c).  It is unnecessary to reach this issue, however,
because Plaintiff has failed to allege **any** specific information acquired by
JPMC in its role as a clearing bank for Lehman.

Lehman's weak financial situation are insufficient to support
the claim that JPMC had specific knowledge about Lehman's
impending default.[4]  To be sure, demanding additional collateral
and taking advantage of Lehman's weak negotiating position
certainly suggests that JPMC harbored some concerns about
Lehman's creditworthiness, but that is a far cry from the
conclusion that JPMC knew that maintaining the Plan's
investments in Lehman was unduly risky.  The Complaint is silent
on that issue.

Plaintiff further alleges that liquidating the Plan's
investments in the Lehman Notes would have been prudent and
would have prevented the losses to the Plan's portfolio.  (Id. ¶
108.)  Under the prudent man standard, a fiduciary is required
"(1) to employ proper methods to investigate, evaluate and
structure the investment; (2) to act in a manner as would others
who have a capacity and familiarity with such matters; and (3)
to exercise independent judgment when making investment
decisions."  Bd. of Trs. of Local 295/Local 851-IBT Emp'r
Pension Fund v. Callan Assocs., Inc., No. 97 Civ. 1741, 1998 WL
289697, at *3 (S.D.N.Y. Jun. 4, 1998) (citations omitted); see
also Katsaros v. Cody, 744 F.2d 270, 279 (2d Cir. 1984), cert.

---

[4] Plaintiff also alleges, based on the Lehman Complaint, that JPMC's
"collateral demands [as a clearing bank] were actually based on internal risk
models that **assumed** a future Lehman bankruptcy."  (Compl. ¶ 107 (emphasis in
original).)  This assertion does not provide any facts suggesting that JPMC
had specific and relevant knowledge.

denied sub nom, Cody v. Donovan, 469 U.S. 1072 (1984) (finding
that the proper inquiry is whether the fiduciary "at the time
they engaged in the challenged [investments], employed the
appropriate methods to investigate the merits of the
investment[s] and to structure the investment[s]."). Plaintiff
alleges that JPMC violated its duty to monitor the investments,
but provides no facts to support that assertion. (Compl. ¶
137.) Likewise, Plaintiff claims that any sophisticated
investment manager with the knowledge attributed to JPMC would
have changed the Plan's investments, but the Complaint is devoid
of factual support for that conclusion.[5] (Id. ¶ 114.) Moreover,
Plaintiff alleges in only the vaguest terms that JPMC failed to
conduct a proper investigation into the Lehman investments and
that JPMC did not exercise independent judgment in deciding to
keep the Plan invested in the Lehman notes. (Id. ¶¶ 115-16.)
Plaintiff has failed to allege sufficient facts to support the
allegation that JPMC did not act in accordance with the prudent
man standard, and beyond that ERISA imposes no duty to make a
particular investment decision. Wilkins v. Mason Tenders Dist.
Council Pension Fund, 445 F.3d 572, 579 (2d Cir. 2006) (quoting

---

[5] Plaintiff cites the prices at which the Lehman Notes were trading on the
days JPMC demanded additional collateral from Lehman as evidence that JPMC
"could and should have minimized the Plans' losses by selling the
Investments." (Compl. ¶¶ 110-11.) The Complaint, however, does not allege
sufficient facts about the investment decision making process or the factors
that must have been considered to properly assess whether liquidating the
Notes would have been prudent at the time.

11

Diduck v. Kaszycki & Sons Contractors, Inc., 874 F.2d 912, 917
(2d Cir. 1989)). Ultimately, the Plan incurred losses resulting
from its continued holding of the Notes, but disappointment with
the portfolio's performance is distinct from the diligence JPMC
conducted regarding the investments and the prudence of its
decision to keep them, as judged under the circumstances that
existed at that time. St. Vincent Catholic Med. Ctrs. v. Morgan
Stanley Inv. Mgmt. Inc., No. 09 Civ. 9370, 2010 WL 4007224, at
*4 (S.D.N.Y. Oct. 4, 2010).

Finally, the Complaint alleges that investment in the Note
that had a maturity rate of three years violated the Guidelines'
requirement that a floating rate note must have a maximum final
maturity limit of two years at the time of purchase. (Compl. ¶
3.) It appears that Plaintiff has withdrawn this claim, as it
did not address the issue in its opposition. Nonetheless, the
Pricing Supplement to the Note's prospectus specifies that the
Note had a maturity term of two years at the time of purchase,
which comports entirely with the Guidelines.[6] (Bonderoff Decl.
Ex. E at 4; SLA App. 1 § F.3.) The Court therefore rejects the

---

[6] Because Plaintiff raised the issue of the Note's maturity in the Complaint,
the Court may consider the Note's prospectus, which was filed publicly with
the Securities and Exchange Commission, as required by law. Kramer v. Time
Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991); In re Merrill Lynch & Co.,
Inc., 273 F. Supp. 2d 351, 357 (S.D.N.Y. 2003) (citation omitted). The Court
is not bound by Plaintiff's assertions that are contradicted by the
prospectus. Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1095 (2d Cir.
1995); In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 405-
06 (S.D.N.Y. 2011) (citations omitted).

assertion that JPMC violated the Guidelines' maturity
requirement.

## II.  Duty of Loyalty Claim

Plaintiff asserts that JPMC breached its duty under ERISA §
404(a)(1) "to invest the Collateral solely in the exclusive
interests of the Plans and their participants and beneficiaries
and for the exclusive purpose of providing retirement benefits."
(Compl. ¶ 133.)  Per the fee arrangement agreed upon by the
parties, JPMC stood to earn 30-40% of any profits to the Plan
and would bear no losses should the Plan's investments lose
money.  Plaintiff contends that this "heads I win, tails you
lose" scenario created a situation in which JPMC "had no risk of
loss" with respect to investing the Plan's assets.  (Id. ¶¶ 118,
144.)  According to the Complaint, JPMC had created a conflict
of interest whereby it "favored its own interests in gambling to
make profits without any reasonable regard to losses that could
be suffered by the Plans."  (Id. ¶ 142.)

The Complaint appears to allege that the fee arrangement
itself created a conflict of interest in violation of
Defendant's duty of loyalty. (Id. ¶ 141.)  JPMC argues that the
fee arrangement agreed upon by the parties cannot, as a matter
of law, provide the basis for any claim of breach of fiduciary
duty under ERISA, and the allegations related to the fee
arrangement therefore fail.  (Mem. in Support of Mot. to

13

Dismiss, Sept. 15, 2010, 3 ("Def.'s Mem.").) Plaintiff has since recast this assertion in its opposition papers and now contends that the fee arrangement merely provided a motive for JPMC to breach its fiduciary duty. (Mem. in Opp. to Mot. to Dismiss, Nov. 15, 2010, 21 ("Pl.'s Opp.").)

To the extent that the Complaint alleges a conflict of interest arising out of the fee arrangement between JPMC and the Plan, Plaintiff's duty of loyalty claim must fail because JPMC "is not an ERISA fiduciary with respect to the terms of the agreement for [its] compensation." F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1259 (2d Cir. 1987) (citation omitted). Plaintiff entered into the SLA with JPMC freely and after arms'-length negotiations. Plaintiff cannot now claim that the very fee arrangement to which it agreed creates a conflict of interest to JPMC's unfair advantage.

Plaintiff also alleges that JPMC breached its duty of loyalty to the Plan under ERISA § 406(b) by demanding collateral from Lehman as its clearing bank, thus "put[ting] its own interests first to obtain priority over unsecured creditors, including the Plans." (Compl. ¶ 99.) The allegation that JPMC engaged in self-dealing conduct with respect to the Plan fails for two reasons. First, in fulfilling its independent role as a clearing bank for Lehman, JPMC did not engage in a prohibited transaction whereby it "deal[t] with the assets of the plan," as

14

required by ERISA § 406(b).  29 U.S.C. § 1106(b)(1).  Second,
JPMC was not acting in a fiduciary capacity when it made the
demands for collateral.  Bd. of Trs. of the AFTRA Ret. Fund v.
JPMorgan Chase Bank, N.A., 806 F. Supp. 2d 662, 691 (S.D.N.Y.
2011) ("JPMC's Investment Bank did not use the assets of
Plaintiffs' plans; instead, acting as a creditor it conducted a
transaction with a third party, which affected the Plans.")
(quotation marks and citation omitted); see also Pegram v.
Herdrich, 530 U.S. 211, 226 (2000).

     Plaintiff has not sufficiently alleged a breach of the
fiduciary duty of loyalty under ERISA § 404(a)(1) or § 406(b).
JPMC's motion to dismiss the duty of loyalty claim is therefore
granted.

**CONCLUSION**

     For the foregoing reasons, JPMC's motion to dismiss the
Second Amended Class Action Complaint is GRANTED.   In
Plaintiff's conclusion to its opposition memorandum, Plaintiff
has requested leave to replead but has offered no additional
reasons or facts in support of that request.  Accordingly, that
request is denied.  The Clerk of the Court is directed to
terminate this motion (Dkt. #39) and to close this case.

SO ORDERED:

_____
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:     New York, New York
           April 20, 2012